EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Liselie Reyes Martínez, et al<br><br>Apelados<br><br>v.<br><br>Colegio de Cirujanos Dentistas de Puerto Rico, et al<br><br>Apelantes | Apelación<br><br>2025 TSPR 15<br><br>215 DPR ___ |

Número del Caso: AC-2024-0056


Fecha: 28 de febrero de 2025


Tribunal de Apelaciones:

    Panel XI


Representantes legales de la parte apelante:

    Lcdo. Pedro Ortiz Álvarez
    Lcdo. Jesús Antonio Rodríguez Urbano
    Lcdo. Joel Andrews Cosme Morales
    Lcdo. Guillermo San Antonio Acha


 Representantes legales de la parte apelada:

    Lcdo. Ramón L. Rosario Cortés
    Lcdo. Miguel A. Rodríguez Ramos


 Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Amir Cristina Nieves Villegas
    Procuradora General Auxiliar


Materia: Derecho Constitucional – Inconstitucionalidad de la disposición legal que exige la afiliación al Colegio de Cirujanos Dentistas de Puerto Rico como requisito de licenciamiento profesional.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liselie Reyes Martínez, et al

        Apelados

          v.                  AC-2024-0056

Colegio de Cirujanos Dentistas de Puerto Rico, et al

        Apelantes

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 28 de febrero de 2025.

El reconocimiento de ciertos derechos constitucionales como prerrogativas fundamentales del individuo surge del consenso popular de que algunos valores sociales ameritan un nivel especial de protección frente al Estado. Una vez plasmados en la Constitución de Puerto Rico, los derechos del pueblo se erigen como un contrapeso a los poderes del Gobierno. Por esa razón, toda interferencia estatal que atente contra las libertades fundamentales de las personas debe ser sometida al escrutinio judicial de más alto rigor.

Ese es el caso de las cláusulas estatutarias que obligan a diversos grupos profesionales a asociarse

a un Colegio, como lo es la que hoy nos ocupa. En esta ocasión, estamos llamados a examinar la validez constitucional de la disposición legal que exige la afiliación al Colegio de Cirujanos Dentistas de Puerto Rico como requisito de licenciamiento profesional. Según el estándar adjudicativo aplicable a controversias de esta índole, nos corresponde justipreciar si la interferencia con el derecho de asociación de los cirujanos dentistas e higienistas es el único mecanismo al alcance del Estado para adelantar su interés apremiante de regular el ejercicio de la profesión y preservar la salud oral del pueblo. Tras analizar exhaustivamente las disposiciones legales concernientes, así como los alegatos de las partes, concluimos que el requisito de afiliación compulsoria impugnado es inconstitucional. En ese contexto, hoy vindicamos el derecho de los miembros de la profesión dental a asociarse según los designios de su conciencia. Al hacerlo, reafirmamos la preeminencia del derecho a la libertad de asociación como elemento esencial de la libertad humana y la democracia.

I

Esta controversia se originó a raíz de una demanda en la que un grupo de odontólogos compuesto por Liselie Reyes Martínez, César A. García Aguirre, Edgardo Alegría Alicea, Juan Emmanuelli Bauzá, Ángel Otero Díaz, Delia Vergé Quiles, Luis D. Silva Ramírez, Edgardo Olivencia, Laura Fuxench López, y Huascar Amador Lebroux (dentistas-apelados) impugnó

la constitucionalidad de la colegiación compulsoria requerida para poder ejercer la profesión dental en Puerto Rico.

El 16 de marzo de 2020, el Colegio de Cirujanos Dentistas de Puerto Rico (Colegio) presentó su contestación a la demanda. En síntesis, aseveró que la colegiación compulsoria era constitucionalmente permisible y necesaria para salvaguardar el interés apremiante del Estado de regular la profesión y proteger la salud pública. Además, afirmó que el Colegio entraña un rol crucial en la salud oral y el bienestar general. Asimismo, arguyó que la Junta Examinadora no tiene la capacidad económica para asumir las funciones del Colegio, lo que a su juicio, crearía un disloque que afectaría el interés estatal en disyuntiva.

Posteriormente, los dentistas-apelados presentaron una moción de sentencia sumaria. Alegaron que el caso podía ser resuelto sumariamente, porque versaba sobre una controversia de estricto derecho. Por su parte, el Estado presentó un escrito en oposición a la sentencia sumaria de los dentistas-apelados y, a su vez, solicitó sentencia sumaria a su favor. En suma, acreditó la inexistencia de hechos en controversia, pero argumentó que la colegiación obligatoria respondía al interés apremiante de velar por la salud del pueblo. Particularizó que el Colegio ejerció un rol fundamental durante la crisis de la pandemia del Covid-19.

Luego de varios trámites procesales, el Tribunal de Primera Instancia dictó una sentencia en la que sostuvo la

constitucionalidad de la colegiación compulsoria de los cirujanos dentistas. El foro primario coligió que el requisito de afiliación era indispensable para la preservación de la salud pública.

Inconformes, los dentistas-apelados recurrieron al Tribunal de Apelaciones. Subsiguientemente, el foro intermedio emitió una sentencia en la que revocó y devolvió el caso al foro primario. En esencia, ese foro concluyó que existía controversia respecto a si la colegiación compulsoria exigida a los integrantes de la profesión dental era el medio menos intrusivo para salvaguardar el interés apremiante del Estado.

Devuelto el caso al foro primario y tras varios incidentes procesales, los dentistas-apelados presentaron una nueva solicitud de sentencia sumaria. En reacción, el Colegio también presentó su respectiva moción de sentencia sumaria. Así las cosas, el Tribunal de Primera Instancia emitió una sentencia en la que validó nuevamente la constitucionalidad de la colegiación compulsoria.

En desacuerdo, los dentistas-apelados presentaron un recurso de apelación ante el foro intermedio. Evaluado el expediente, el Tribunal de Apelaciones emitió un dictamen en el que decretó la inconstitucionalidad de la colegiación compulsoria. En síntesis, concluyó que la Junta Examinadora era el ente regulador de la profesión y el mecanismo menos intrusivo del derecho a la libertad de asociación de los dentistas.

Consecuentemente, el Colegio recurrió ante nos mediante un recurso de apelación. Acogido el recurso mediante el trámite de la Regla 50 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, le concedimos un término a las partes para que presentaran sus respectivos alegatos.

En cumplimiento, el Colegio presentó su alegato. A modo de prefacio, expuso que el derecho fundamental a la libertad de asociación no puede interpretarse en el vacío. Asimismo, expresó que la noción de la justicia se alcanza a través de un equilibrio entre los derechos y las obligaciones propias de la vida en sociedad. Con ese silogismo, concluyó que la colegiación compulsoria en profesiones vitales como la odontología se justifica plenamente. De igual forma, el Colegio mencionó que la pieza legislativa que introdujo el requisito de afiliación impugnado es de aprobación preconstitucional. Agregó que, al ratificar la Constitución, varios de los constituyentes conocían del requisito de colegiación ya que participaron en el proceso de aprobación del estatuto. De esa premisa, el Colegio intenta derivar la conclusión de que la intención original de los constituyentes no fue incluir la colegiación compulsoria de los dentistas dentro de la categoría de medidas que coartan el derecho a la libertad de asociación.

Además, el Colegio arguyó que el Tribunal de Apelaciones erró al no tomar en consideración una serie de hechos incontrovertidos que, a su juicio, son materiales para demostrar que la colegiación compulsoria es necesaria.

Entre ellos, destacó: la incapacidad económica de la Junta Examinadora, el rol fiscalizador del Colegio a través del Comité de Quejas y Agravios, y el sinnúmero de iniciativas sociales que esta asociación realiza en beneficio de la salud oral.

Por otra parte, en su alegato, los dentistas-apelados refutaron los señalamientos del Colegio. Principalmente, argumentaron que el esquema regulatorio de la profesión odontológica en Puerto Rico es extremadamente similar al del Colegio de Médicos, cuya colegiación compulsoria declaramos inconstitucional recientemente. Es decir, afirmaron que la Junta Examinadora es el único organismo que posee facultades regulatorias en cuanto al proceso de licenciamiento, renovación o suspensión de una licencia para ejercer la odontología. En ese sentido, los dentistas-apelados indicaron que es errónea e impertinente la premisa de que la Junta Examinadora no es solvente financieramente para asumir las funciones del Colegio. Deducen lo anterior pues, estiman que de surgir una colegiación voluntaria la Junta Examinadora no tendría que asumir funciones distintas o adicionales a las que ostenta hoy.

Finalmente, el 12 de septiembre de 2024 el Estado presentó su alegato. En su escrito, resumió el tracto procesal del caso, así como los argumentos de las partes. No obstante, sin asumir una postura sobre los méritos, señaló que la controversia constitucional ante nos es de estricto

derecho y que es a este foro a quien le corresponde justipreciar el derecho aplicable.

Así pues, con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver la controversia de autos, no sin antes esbozar el derecho aplicable.

II

### A. Libertad de asociación en Puerto Rico

El derecho a la libertad de asociación en Puerto Rico forma parte de la categoría de derechos fundamentales consagrados de forma expresa en nuestra Constitución. Art. II, Sec. 6, Const. PR., LPRA, Tomo 1, ed. 2023, pág. 303. En Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 811-812 (2014), determinamos que la intención de los constituyentes al adoptar esta garantía constitucional fue reconocer una protección de mayor amplitud a la que se provee al amparo de la Constitución de Estados Unidos. Como corolario, al disponer de controversias que involucren el derecho a la libertad de asociación de las personas, resolvemos por fundamentos locales adecuados e independientes de la doctrina constitucional federal. Véase, Rodríguez Casillas et al. v. Colegio, 202 DPR 428, 455 (2019).

Dada la envergadura que reviste este derecho, su limitación es escudriñada al amparo del escrutinio estricto. Íd., pág. 451. La aplicación de este escrutinio activa una presunción de inconstitucionalidad de la acción estatal impugnada. Vélez et al. v. Col. Optómetras et al., 212 DPR

293, 304 (2023); San Miguel Lorenzana v. ELA, 134 DPR 405, 425 (1993). Por eso, una vez establecida una intromisión con el derecho fundamental, le corresponde al Estado demostrar que su actuación es indispensable para lograr un interés gubernamental apremiante. Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. Solo de ese modo el Gobierno puede rebatir la presunción de inconstitucionalidad.

En materia de legislación sobre colegiación compulsoria, la casuística de este Tribunal ha enfatizado consistentemente que los requisitos de afiliación crean una fricción inevitable con el derecho a la libertad de asociación de los profesionales. Rodríguez Casillas et al. v. Colegio, supra, pág. 448. De igual forma, el precedente dicta que no basta con articular la existencia de un interés apremiante, sino que es imperativo establecer que la intromisión constitucional es indispensable. Vélez et al. v. Col. Optómetras et al., supra, pág. 311. En esa línea, al atender controversias de colegiación que involucraban el interés apremiante de la salud pública, sentenciamos que la envergadura del interés no exime de establecer la indispensabilidad de la lesión constitucional. Íd. Es decir, el interés apremiante en sí mismo no es justificación para coartar derechos fundamentales a menos que esa intromisión sea el único mecanismo al alcance del Estado para lograr la consecución de su interés. Íd.

Posteriormente, aclaramos que la colegiación compulsoria, aunque pueda servir a distintos fines, debe

responder únicamente al interés apremiante en la reglamentación estatal del ejercicio de una profesión. Delucca v. Col. Méd. Cirujanos y otros, 213 DPR 1, 20 (2023). En lo pertinente a las profesiones médicas, aunque la colegiación compulsoria sea útil o conveniente para promover la salud y el bienestar social, su constitucionalidad se analiza en el contexto de su necesidad como mecanismo de regulación profesional. Íd.

Con ello en mente, al adjudicar la constitucionalidad del requisito de afiliación compulsoria al Colegio de Optómetras y al Colegio de Médicos Cirujanos reconocimos la preeminencia del interés público en la salud y el rol de primera línea que desempeñan estos profesionales en nuestra sociedad. Vélez *et al*. v. Col. Optómetras, *et al.*, supra; Delucca v. Col. Méd. Cirujanos y otros, supra. No obstante, al estudiar individualmente el esquema regulador de las mencionadas profesiones, concluimos que la membresía obligatoria no era indispensable para lograr los objetivos del Estado. Íd.

### B. *Colegio de Cirujanos Dentistas de Puerto Rico*

El Colegio de Cirujanos Dentistas es una entidad cuasi pública creada en virtud de las disposiciones de la Ley Núm. 162 de 13 de mayo de 1941, según enmendada, conocida como la Ley del Colegio de Cirujanos Dentistas de Puerto Rico, 20 LPRA sec. 111 *et seq*. Al momento de su creación, la Asamblea Legislativa le concedió al Colegio las facultades siguientes:

(a) Para subsistir a perpetuidad bajo este nombre; demandar y ser demandado, como persona jurídica.

(b) Para poseer y usar un sello que podrá alterar a su voluntad.

(c) Para adquirir derechos y bienes, tanto muebles como inmuebles, por donación, legado, tributos entre sus propios miembros, compra o de otro modo; y poseerlos, traspasarlos, hipotecarlos, arrendarlos y disponer de los mismos en cualquier forma.

(d) Para nombrar y elegir sus directores y funcionarios u oficiales, según estipule el reglamento del Colegio y la ley que lo creó.

(e) Para adoptar su reglamento, que será obligatorio para todos los miembros, y para enmendar aqu[e]l, en la forma y bajo los requisitos que en el mismo se estatuyan. Se autoriza al Colegio, previa audiencia en la que se dará al interesado oportunidad de ser oído, a imponer sanciones administrativas a los miembros de dicho Colegio que violaren las disposiciones de los reglamentos así adoptados. El reglamento dispondrá todo lo concerniente a los procedimientos que habrán de seguirse en dicha audiencia.

**(f) Para adoptar e implantar los cánones de ética profesional que regirán la conducta de los dentistas.**

**(g) Para recibir e investigar las quejas juradas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta Directiva para que actúe,** y después de una vista preliminar, en la que se dará oportunidad al interesado o su representante, si encontrara causa fundada instituir el correspondiente procedimiento de destitución ante la Junta Dental Examinadora. **Nada de lo dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Dental Examinadora para iniciar por su propia cuenta estos procedimientos.**

(h) Para proteger a sus miembros en el ejercicio de la profesión y, mediante la creación de montepíos, sistemas de seguros y fondos especiales, o en cualquier otra forma, socorrer a aquellos que se retiren por inhabilidad física o avanzada edad y a los herederos o a los beneficiarios de los que fallezcan.

(i) Para ejercitar las facultades incidentales que fueren necesarias o convenientes a los fines de su

creación y funcionamiento que no estuvieren en desacuerdo con este subcapítulo. (Negrillas suplidas). Sec. 2 de la Ley Núm. 162, supra, 20 LPRA sec. 112.

Paralelamente, a través de la Sección 13 de la Ley Núm. 162, supra, se le otorgaron al Colegio los deberes y obligaciones siguientes: (1) contribuir al adelanto de la odontología; (2) elevar y mantener la dignidad de la profesión y sus miembros; (3) entablar relaciones con asociaciones análogas de otras jurisdicciones; (4) trabajar por la implantación de leyes razonables y justas relacionadas con la profesión odontológica; (5) cooperar con la profesión médica y sus aliadas en pro del bienestar general; (6) promover relaciones fraternales entre sus miembros; (7) mantener una saludable y estricta moral profesional entre los miembros, y (8) suministrar los informes requeridos por el Gobierno. Sec. 13 de la Ley Núm. 162, supra, 20 LPRA sec. 123.

Por mandato de ley, todos los dentistas que estén admitidos legalmente a ejercer la profesión en Puerto Rico tienen que ser miembros del Colegio. Sec. 4 de la Ley Núm. 162, supra, 20 LPRA sec. 114. De igual forma, la Sección 9 de Ley Núm. 162, supra, dispone que todos los miembros del Colegio deberán pagar una cuota anual que será fijada por reglamento. Íd., 20 LPRA sec. 119. El impago de la cuota conlleva la suspensión de la membresía. Sec. 10 de la Ley Núm. 162, supra, 20 LPRA sec. 120.

Es de notar que, ejercer la práctica dental sin estar debidamente colegiado constituye un delito menos grave. Sec.

12 de la Ley Núm. 162, supra, 20 LPRA sec. 122. Para ser exactos, la ley dispone que: "[t]odo dentista que sin estar debidamente colegiado, según se dispone por esta ley, practique como persona capacitada y autorizada para ello, se anuncie como tal o trate de pasar como dentista colegiado en ejercicio, será culpable de delito menos grave". Íd. El dentista convicto por este delito se expone a multas desde $125 hasta $500, independientes de las acciones disciplinarias que pueda tomar la Junta Dental Examinadora. Íd.

## C. Junta Dental Examinadora

Por otro lado, la Asamblea Legislativa aprobó la Ley Núm. 75 de 8 de agosto de 1925, según enmendada, conocida como la Ley de la Junta Dental Examinadora, 20 LPRA sec. 81 et seq. El propósito del estatuto es "regular la práctica de la [c]irugía dental en Puerto Rico y establecer una Junta Dental Examinadora, para reglamentar a los Higienistas Dentales y a los Asistentes Dentales en Puerto Rico y para establecer delitos y penalidades". Íd. A esos fines se instituyó una Junta Dental Examinadora (Junta Examinadora) compuesta por siete dentistas nombrados por el Gobernador. Sec. 1 de la Ley Núm. 75, supra, 20 LPRA sec. 81. De surgir vacantes en la membresía de la Junta Examinadora, la Asociación Dental de Puerto Rico, el Colegio de Cirujanos Dentistas o cualquier otra asociación bona fide reconocida como persona jurídica, podrá recomendar al Gobernador

candidatos sustitutos. Sec. 8 de la Ley Núm. 75, supra, 20

LPRA sec. 9.

En virtud de ley, las funciones esenciales delegadas a

la Junta Examinadora consisten en:

(a) Autorizar el ejercicio de la profesión de dentista y sus especialidades, según las reconoce el *American Dental Association (ADA)*, la de asistente dental e higienista dental en el Estado Libre Asociado de Puerto Rico, de conformidad añade las disposiciones de esta ley y los reglamentos adoptados en virtud de la misma.

(b) Denegar, suspender, cancelar o renovar cualquier licencia según se dispone en esta ley.

(c) Disponer en su reglamento para el desarrollo de un programa de orientación efectivo y amplio dirigido a los que aspiran a estudiar odontología en términos, entre otros, de la necesidad de dentistas en Puerto Rico, los requisitos establecidos por ley para tomar la reválida y para obtener una licencia permanente en Puerto Rico y las implicaciones o consecuencias de asistir a escuelas de odontología no acreditadas por agencias acreditadoras de las escuelas dentales de los Estados Unidos de Norte América y por consiguiente no reconocidas por la Junta.

(d) Adoptar normas para el reconocimiento de escuelas de odontología de cualquier otra jurisdicción según disponga la ley y los reglamentos de la Junta. Serán reconocidas aquéllas cuyos requisitos de admisión y programas académicos sean análogos a los que exige la Escuela de Medicina Dental del Recinto de Ciencias Médicas de la Universidad de Puerto Rico para otorgar diplomas de doctorado en medicina dental.

[…]

(g) Preparar y administrar los exámenes de reválida.

(h) Atender y resolver todas las querellas presentadas por violaciones a las disposiciones de este subcapítulo o de los reglamentos adoptados, en virtud del mismo, previa notificación y celebración de vista.

(i) Expedir citaciones por correo certificado con acuse de recibo para la comparecencia de testigos o de partes interesadas y requerir la presentación de documentos pertinentes a ser utilizados como prueba

documental en cualquier vista que se celebre para cumplir con los propósitos de esta ley. […]. Íd., 20 LPRA sec. 81.

En cuanto a los exámenes de admisión a la profesión, el estatuto dispone que la Junta Examinadora será la encargada de administrarlos al menos dos veces al año. Sec. 2 de la Ley Núm. 75, supra, 20 LPRA sec. 82. De igual forma, y sin afán de ser exhaustivos, la Sección 2 de la ley regula detalladamente los términos y condiciones para poder tomar el examen de admisión a la profesión dental. Íd. Asimismo, la Sección 9 contiene una lista taxativa de los requisitos de admisión a la profesión que se deben acreditar ante la Junta Examinadora. Sec. 9 de la Ley Núm. 75, supra, 20 LPRA sec. 89.

Conviene puntualizar que la Junta Examinadora es el organismo autorizado para reglamentar y suscribir convenios de reciprocidad con las juntas examinadoras de los distintos estados de Estados Unidos y países extranjeros. Sec. 4 de la Ley Núm. 75, supra, 20 LPRA sec. 84. De igual forma, la Junta Examinadora tiene la potestad de tomar juramentos y citar testigos para cualquier asunto bajo su jurisdicción, so pena de desacato. Sec. 6 de la Ley Núm. 75, supra, 20 LPRA sec. 86.

En lo atinente a su potestad fiscalizadora, la Sección 7 de la Ley Núm. 75, supra, le confiere a la Junta Examinadora el poder de suspender o cancelar cualquier licencia para ejercer la cirugía dental en Puerto Rico, así

como imponer cualquiera de las sanciones contempladas en la ley. Íd., 20 LPRA sec. 87.

Al respecto, la Junta Examinadora puede iniciar procedimientos para la suspensión o cancelación de licencias, ya sea por iniciativa propia o mediante querella. Sec. 7A de la Ley Núm. 75, supra, 20 LPRA sec. 87a. Para ello, la ley estableció un procedimiento minucioso que ofrece garantías de notificación y audiencia, y posteriormente, también la oportunidad de solicitar reconsideración y reactivación de licencia. Íd.

De igual modo, la Ley Núm. 75, supra, contempla medidas disciplinarias para casos de daños y perjuicios por impericia profesional. Sec. 7B de la Ley Núm. 75, supra, 20 LPRA sec. 87b. En lo pertinente, se dispone que el Comisionado de Seguros deberá notificar a la Junta Examinadora de todo caso adjudicado contra un dentista por impericia profesional. Íd. Sucesivamente, la Junta Examinadora deberá llevar a cabo las investigaciones necesarias a los fines de determinar las medidas disciplinarias que correspondan. No obstante, cabe destacar que para estos procedimientos investigativos la ley dispone que la Junta Examinadora solicitará al Secretario de Justicia la designación de un Oficial Investigador. Íd. Por último, las decisiones disciplinarias que tome la Junta Examinadora están sujetas a revisión judicial. Sec. 7C de la Ley Núm. 75, supra, 20 LPRA sec. 87c-1.

A la luz de ese marco jurídico, procedemos a resolver la controversia de derecho que nos ocupa.

III

Como antesala a la disposición de la controversia, nos parece oportuno abordar un argumento teórico que el Colegio invoca. En esencia, esta entidad afirma que el requisito de colegiación de los cirujanos dentistas debe ser ponderado bajo un crisol distinto al de otras colegiaciones, pues la Ley Núm. 162, supra, aquí impugnada, es una legislación preconstitucional que fue aprobada por algunos legisladores que formaron parte de la Convención Constituyente. A su juicio, el hecho de que los constituyentes conocían del factor obligatorio y no tomaron acción para dejarlo sin efecto al aprobar la Constitución, denota que la libertad de asociación no se concibió como un derecho en conflicto con la colegiación compelida.

Primeramente, la protección de la cláusula constitucional sobre el derecho a la libertad de asociación no está supeditada a la fecha de ratificación del estatuto de colegiación compelida. Es la naturaleza de la actuación estatal lo que activa o no las salvaguardas de la Carta de Derechos. La preconstitucionalidad de un estatuto no subsana el vicio jurídico del que pueda adolecer. Véase, Art. IX, Sec. 1, Const. PR., LPRA, Tomo 1, ed. 2023, pág. 472.

En esa coyuntura, si el razonamiento subyacente en la premisa del Colegio es que el derecho a la libertad de asociación no protege a los profesionales que son obligados

a asociarse para obtener una licencia, porque los legisladores no hicieron nada al respecto, se equivoca. Esa aseveración nos invita a descartar más de una década de precedente y desterrar de nuestro ordenamiento el reconocimiento de un derecho fundamental, lo que rechazamos con fervor. Es labor de los tribunales hacer valer la Carta de Derechos y determinar su alcance.

No hay un ápice de evidencia en el Diario de Sesiones de la Convención Constituyente que valide de algún modo la tesis del Colegio. De lo que sí hay evidencia es de la primacía que los constituyentes quisieron brindarle a este derecho de asociación, como un pilar fundamental de la libertad humana y la democracia. Ese análisis está plasmado desde hace diez años en Rivera Schatz v. ELA y C. Abo. II, supra, págs. 810-812.

Aclarado este extremo, procedemos a resolver los méritos del caso. En síntesis, el Colegio solicita que revoquemos la declaración de inconstitucionalidad dictada por el Tribunal de Apelaciones, porque que no se tomaron en consideración una serie de hechos incontrovertidos, que a su entender, sustentan la validez del requisito de colegiación. Según expresa el Colegio, las determinaciones de hechos atinentes a la importancia de sus múltiples iniciativas en pro de la salud, la incapacidad presupuestaria de la Junta Examinadora, y su facultad de recibir e investigar quejas, evidencian la imprescindibilidad de la afiliación obligatoria. En atención a ello, el Colegio asevera que la

colegiación compelida es el mecanismo menos lesivo para adelantar el interés apremiante del Estado en la regulación de la profesión y la protección de la salud pública. No le asiste la razón.

En primer lugar, debemos recalcar un aspecto importante sobre el primer elemento de análisis en el escrutinio estricto; a saber, la existencia de un interés apremiante. Esto se hace imperativo, pues subsiste la noción errónea de que la colegiación compulsoria puede justificarse a base de su utilidad para adelantar otros intereses apremiantes ajenos al interés del Estado en la regulación de las profesiones. Por ejemplo, con la intención de justificar la colegiación obligatoria de los odontólogos, en su alegato, el Colegio enunció que "la salud del pueblo es la suprema ley, y su protección no admite concesiones ni compromisos". Alegato del Colegio, pág. 6. Aseveraciones como esta promueven una representación descontextualizada de lo que está verdaderamente en disyuntiva y parecerían sugerir una claudicación total de los derechos individuales con la simple alusión al interés de la salud pública.

Pese a lo anterior, reiteramos que la validez constitucional de **un requisito de licenciamiento profesional** que interfiere con el derecho fundamental de libertad de asociación se analiza a la luz del interés apremiante del Estado de regular una profesión. Dicho de otro modo, la regulación de una profesión es el único interés estatal que puede servir de base para justificar una medida de

colegiación compulsoria. Claramente, la reglamentación de una profesión que interviene directamente con la salud del pueblo reviste superioridad y debe ser evaluada en su justo contexto. No obstante, en controversias de esta índole, ya hemos resuelto que la preservación de la salud es vista como un interés accesorio a la reglamentación profesional adecuada. Delucca v. Col. Méd. Cirujanos y otros, supra, pág. 20.

Por ese motivo, son inmateriales todas las determinaciones de hechos avaladas por el Tribunal de Primera Instancia que versan exclusivamente sobre las múltiples iniciativas de impacto social que el Colegio desempeña en beneficio de la salud oral, y que no guardan una relación directa con la regulación del ejercicio de la profesión. El reconocimiento del rol y valía de la institución no es lo que aquí está en disputa. Aun si damos por hecho lo anterior, subsiste en controversia lo verdaderamente medular en este caso: ¿Es imprescindible que todos los cirujanos dentistas se afilien a un colegio para que el Estado pueda regular la práctica de esa profesión en beneficio de la salud del pueblo? Eso es lo que nos corresponde resolver.

En esa tesitura, el análisis exhaustivo y sosegado de los estatutos que nos conciernen deja al descubierto que la Junta Examinadora es el único ente regulador de la profesión odontológica en Puerto Rico. Como bien manifestó el Gobierno en su alegato, la Ley Núm. 75, supra, creó la Junta

Examinadora "como la entidad facultada por el Estado para reglamentar todo lo concerniente al ejercicio profesional de los cirujanos dentistas en Puerto Rico". (Subrayado en el original). Alegato del Estado, pág. 23. En consonancia, solo este organismo está autorizado para conceder, suspender o revocar una licencia. Sec. 1 de la Ley Núm. 75, supra.

En contraposición, el Colegio se erige como una entidad bona fide que contribuye al mejoramiento y protección del gremio. A grandes rasgos, por tratarse de un gremio, la mayoría de sus poderes y facultades tienen un enfoque dirigido al mejoramiento y la protección de su membresía. Véanse, Secs. 2 y 13 de Ley Núm. 162, supra, 20 LPRA secs. 112, 123.

Ahora bien, en lo que respecta a la facultad de redactar y aprobar unos cánones de ética profesional, ya este Tribunal ha establecido que esta potestad puede coexistir y subsistir en un escenario de colegiación voluntaria. Véanse: Delucca v. Col. Méd. Cirujanos y otros, supra; Vélez et al. v. Col. Optómetras et al., supra; Rodríguez Casillas et al. v. Colegio, supra.

Ahora bien, el Colegio afirma con vehemencia que la colegiación obligatoria juega un papel crucial en la fiscalización ética de los cirujanos dentistas. Su entendido se fundamenta en la Sección 2(g) de la Ley Núm. 162, supra, que autoriza a esta asociación a recibir e investigar quejas sobre el desempeño profesional de sus miembros y le permite remitir la queja o sus hallazgos a la Junta Examinadora para

que tome la determinación correspondiente. El legislador aclaró, sin embargo, que "[n]ada de lo dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Dental Examinadora para iniciar por su propia cuenta estos procedimientos". Íd.

Lo cierto es que, esa facultad investigativa no torna indispensable el factor compulsorio aquí impugnado. Nada impide que el Colegio continúe investigando la conducta de sus miembros u otras situaciones que entienda pueden afectar la buena práctica y poner en riesgo la salud pública. De hecho, esta facultad es muy similar a la que estudiamos en las controversias del Colegio de Médicos y el Colegio de Optómetras y que en su día nos resultaron insuficientes para sostener un mandato de colegiación.

En realidad, no existe incompatibilidad de coexistencia entre los poderes delegados al Colegio y el surgimiento de una colegiación voluntaria. La tajante oposición del Colegio al surgimiento de una colegiación voluntaria no se basa en la posible pérdida de sus facultades legales; de hecho, eso nunca fue argumentado y no está en controversia. Más bien, el Colegio enuncia que necesita el pago de la cuota de todos los dentistas para poder descargar efectivamente esas funciones. Bajo ese supuesto, afirma que la colegiación compulsoria es permisible, pues no supone para los cirujanos dentistas e higienistas mayor obligación que la de pagar una cuota.

Del mismo modo, el Colegio argumenta que colabora con la Junta Examinadora en la denuncia de ilegalidades en la práctica odontológica. Sin embargo, tampoco es necesaria la colegiación compulsoria para ello. No estamos menospreciando esa gestión. Lo que sucede es que este tipo de prácticas tan lesivas a la salud pública pueden y deben ser denunciadas ante las autoridades correspondientes, por cualquier persona con conocimiento sobre ello. Para eso, la colegiación obligatoria no es un requisito indispensable.

En ese contexto, conviene aclarar de una vez y por todas que, para sustentar la constitucionalidad del requisito de afiliación compulsoria no basta con que la legislación habilitadora del Colegio le delegue a este último alguna facultad que pueda catalogarse como regulatoria. La presunción de inconstitucionalidad de la interferencia gubernamental subsiste mientras no se demuestre por qué es imprescindible obligar a los profesionales a colegiarse. Lo contrario supondría que la Asamblea Legislativa podría introducir cualquier enmienda para delegar algún poder regulador al Colegio y circunvalar así el vicio constitucional del que adolecen las cláusulas de membresía compulsoria.

Previo a finalizar, es importante reiterar que es patentemente erróneo el razonamiento de que la colegiación compulsoria es una intrusión leve por no suponer mayor obligación que la de pagar una cuota. El subsidio indirecto del Estado al funcionamiento del Colegio de Cirujanos

Dentistas —a través de la cuota obligatoria— no puede ser a expensas del derecho de los individuos a afiliarse con quien deseen o a no afiliarse. Aquí no se está cuestionando el poder estatal de imponer contribuciones o el requisito de un pago por licenciamiento. Para fines del análisis constitucional, el factor de compulsoriedad en la membresía es lo que crea la fricción con el derecho fundamental. El argumento de que la asociación obligatoria es necesaria porque de ello depende el pago de la cuota, además de ser circular, no satisface el rigor del escrutinio estricto. La deseabilidad de obtener financiamiento sin mayor esfuerzo no puede ser carta blanca para coartar derechos individuales.

En el caso de autos, no existen fundamentos de suficiente peso para justificar que los cirujanos dentistas permanezcan sujetos a la colegiación compulsoria que ya invalidamos en el caso de los médicos cirujanos y los optómetras. Al atender esas controversias, también escudriñamos la indispensabilidad de la colegiación compulsoria a la luz del delicado interés apremiante de regular profesiones de primera línea en el cuidado de la salud pública. Pese a ello, el desenlace del análisis interpretativo nos llevó a la conclusión de que existían alternativas menos intrusivas de regular la profesión que el requisito de colegiación. En el caso de autos, no hay razón para alejarnos del precedente; debemos reconocerle a los cirujanos dentistas el mismo grado de protección que le hemos

concedido al derecho a la libertad de asociación de otros profesionales de la salud.

El reconocimiento de que hay otra manera de hacer las cosas sin interferir con las libertades no es producto de un análisis automatizado y descontextualizado. Por el contrario, es la consecuencia ineludible de la evaluación constitucional metódica, atada al precedente y no a la validación automática de cualquier esquema estatutario.

Por eso, conforme al derecho aplicable, es ineludible concluir que colegiación compulsoria de los dentistas resulta una intromisión innecesaria e impermisible. Así como hemos afirmado previamente, en "el caso de que necesiten mejorarse [los estándares de la práctica profesional], lo que resultaría necesario sería modificar y corregir los requisitos para ingresar y mantenerse en la profesión". Rodríguez Casillas *et al.* v. Colegio, supra, pág. 452. Sin embargo, la conveniencia del *statu quo* no justifica el menoscabo de derechos fundamentales. Lo cierto es que tampoco podemos dejar en suspenso la Carta de Derechos por una yuxtaposición de alusiones al bien común y vaticinios hiperbolizados de una supuesta desregulación y crisis salubrista.

A manera de epílogo, conviene recordar —como lo hemos hecho en el pasado— que la conclusión a la que llegamos hoy, en nada afecta la capacidad legal del Colegio de Cirujanos Dentistas de continuar operando y realizando su labor encomiable en beneficio de la profesión y de la salud

pública. El deber bien cumplido es la mejor carta de presentación de una asociación de membresía voluntaria.

IV

Por los fundamentos que anteceden, se confirma la sentencia del Tribunal de Apelaciones y se decreta la inconstitucionalidad del requisito de afiliación compulsoria al Colegio de Cirujanos Dentistas de Puerto Rico.

Se dictará Sentencia en conformidad.


Rafael L. Martínez Torres
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liselie Reyes Martínez, et al

    Apelados

       v.                           AC-2024-0056

Colegio de Cirujanos Dentistas
de Puerto Rico, et al

    Apelantes

SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirma la sentencia del Tribunal de Apelaciones y se decreta la inconstitucionalidad del requisito de afiliación compulsoria al Colegio de Cirujanos Dentistas de Puerto Rico.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente.

El Juez Asociado señor Colón Pérez disiente del resultado al que hoy se llega y hace constar las siguientes expresiones:

> **El requisito de colegiación compulsoria que se exige en nuestro País como condición para ejercer determinadas profesiones es una medida de protección social.** Éste, a todas luces, puede cohabitar en nuestro ordenamiento jurídico con el derecho constitucional a la libre asociación. Uno no cancela al otro. Sobre el particular, véase nuestra Opinión de Conformidad en *Reyes Sorto et al. v. CIAPR*, 212 DPR 109, 142-155 (2023) y nuestra Opinión Disidente en *Delucca v. Col. Méd. Cirujanos y otros*, 213 DPR 1, 70-79 (2023).

Así pues, al evaluar cuidadosa y detenidamente el estatuto hoy en controversia, --entiéndase, la Ley Núm. 162 de 13 de mayo de 1941, 20 LPRA secs. 111 *et seq.*, disposición legal que crea el Colegio de Cirujanos Dentistas de Puerto Rico y que impone el requisito de colegiación compulsoria--, somos del criterio, como lo hemos sido en el pasado con otras organizaciones profesionales que exigen tal requisito, que las funciones que dicha entidad históricamente ha ejercido constituyen el medio menos oneroso para adelantar el interés apremiante del estado de regular dicha profesión. Lo anterior, ante la ausencia de un ente gubernamental o privado que efectiva y eficazmente atienda tales asuntos.

Recordemos que el Colegio de Cirujanos Dentistas de Puerto Rico ha sido, por años, el ente encargado de evaluar las funciones y deberes que tienen las y los cirujanos dentistas en la isla. En ese sentido, ha tenido a su cargo el implementar las leyes que regulan la referida profesión. Sección 13 de la Ley Núm. 162 de 13 de mayo de 1941, 20 LPRA sec. 123.

Entre las múltiples e importantes responsabilidades del Colegio de Cirujanos Dentistas de Puerto Rico también está el adoptar e implantar cánones de ética profesional que regirán la conducta de los dentistas y el recibir e investigar las quejas juradas que se formulen respecto a la conducta de los miembros en el ejercicio de la profesión. Véase, Sección 2 de la Ley Núm. 162 de 13 de mayo de 1941, 20 LPRA sec. 112. En suma, dicha entidad tiene la finalidad principal de asegurarle al Pueblo --las y los pacientes-- un servicio de salud seguro y de calidad.

Así pues, y en vista de la importante función que desempeña el Colegio de Cirujanos Dentistas de Puerto Rico, --particularmente en las áreas de protección social y ética--, para adelantar los postulados antes reseñados, somos de la opinión que el derecho de sus miembros a no asociarse debe ceder ante los intereses que adelanta la colegiación compulsoria.

En el pasado hemos sido enfáticos en el rol que tiene en el País la colegiación compulsoria de diversas profesiones, y hoy volvemos a insistir en ello:

> [e]stas instituciones no solo han defendido, y defienden, los intereses de

los gremios que agrupan, sino también los de la ciudadanía en general.

Por otra parte, los referidos colegios profesionales cumplen con la importante función de educar, tanto a la sociedad como a sus miembros, sobre los asuntos que atañen a su profesión. De igual forma, se aseguran de que quienes forman parte de su gremio mantengan sus conocimientos actualizados y cumplan con los requerimientos éticos que les rigen, protegiendo así a la ciudadanía de ser víctimas de prácticas ilegales o un desempeño incompetente por parte de los profesionales a los que estas instituciones regulan. Opinión Disidente del Juez Asociado Colón Pérez en *Rodríguez Casillas et al. v. Colegio*, 202 DPR 428, 473-474 (2019).

Siendo ello así, no podemos estar de acuerdo con el resultado al que arriba una mayoría de mis compañeros y compañeras de estrado en el presente caso, quienes de un plumazo decretan la inconstitucionalidad de la colegiación compulsoria de los Cirujanos Dentistas de Puerto Rico.

Es, pues, por todo lo antes expuesto, que muy respetuosamente disentimos del curso de acción seguido por una mayoría de esta Curia el día de hoy.

El Juez Asociado señor Estrella Martínez disiente sin opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liselie Reyes Martínez, *et al.*

    Apelados

       v.                       AC-2024-0056

Colegio de Cirujanos Dentistas de Puerto Rico, *et al.*

    Apelantes

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Una vez más una mayoría de este Tribunal se enfrasca en un análisis autómata y en total abstracción de la realidad para justificar la inconstitucionalidad de una colegiación compulsoria. En esta ocasión, se ve afectada la colegiación de los Cirujanos Dentistas de Puerto Rico. De una plumada, el pronunciamiento mayoritario pone en jaque la integridad de la profesión odontológica y, en consecuencia, la salud del pueblo puertorriqueño. Al dejar sin efecto la colegiación compulsoria de este gremio, una mayoría de este Tribunal atenta contra el rol integral que tiene el Colegio de Cirujanos Dentistas de Puerto Rico en la prestación de servicios odontológicos.

Este proceder es contrario a la realidad de las operaciones cotidianas del colegio profesional en cuestión, quien se encarga de: (1) organizar la profesión; (2) brindar educación continua;(3) procurar que los cirujanos dentales se beneficien de incentivos contributivos, y (4) proveer educación y servicios a la comunidad. Sin lugar a duda, este curso de acción perjudicará la calidad de los servicios de salud dental. Perdimos la oportunidad de validar la constitucionalidad de la colegiación compulsoria de los cirujanos dentistas y, en consecuencia, garantizar que la población puertorriqueña disfrute de servicios de salud que cuenten con andamiajes robustos para asegurar que estos cumplan con los más altos estándares de calidad.

## I.

El 9 de enero de 2020, Liselie Reyes Martínez, César A. García Aguirre, Edgardo Alegría Alicea, Juan Emmanuelli Bauzá, Ángel Otero Díaz, Delia Vergé Quiles, Luis D. Silva Ramírez, Edgardo Olivencia, Laura Fuxench López, y Huascar Amador Lebroux (Cirujanos Dentistas) presentaron una *Demanda y Sentencia declaratoria* ante el Tribunal de Primera Instancia en contra del Gobierno de Puerto Rico (Estado) y del Colegio de Cirujanos Dentistas de Puerto Rico (Colegio). En esta impugnaron la constitucionalidad de la Sección 3 de la Ley Núm. 162 de 13 de mayo de 1941, según enmendada, también conocida como la *Ley del Colegio de Cirujanos Dentistas de Puerto Rico*, 20 LPRA sec. 113 *et seq*. (Ley del Colegio de Cirujanos Dentistas), la cual establece la colegiación compulsoria como requisito de licenciamiento de

los cirujanos dentistas. Argumentaron que condicionar el ejercicio de su profesión al cumplimiento de ese requisito infringía su derecho constitucional de libertad de asociación y expresión. También indicaron que no existía un interés apremiante por parte del Estado que justificara lesionar su derecho constitucional y que existían medios menos onerosos para regular la profesión.

El 16 de marzo de 2020 el Colegio presentó su *Contestación a la demanda*. En esta planteó que los dentistas eran profesionales de la salud cuya labor adelanta la salud pública y que la Junta Dental Examinadora (Junta Dental) no contaba con los fondos suficientes para asumir los múltiples roles del Colegio, por lo que se justificaba la colegiación compulsoria como medida de protección social. En síntesis, el Colegio arguyó que: (1) la colegiación obligatoria resulta necesaria para adelantar el interés gubernamental apremiante de salvaguardar la salud pública; (2) dejar sin efecto ese requisito para el ejercicio de la profesión tendría consecuencias nefastas para la salud pública; (3) la Junta Dental no contaba con los fondos, ni con los recursos, para asumir responsabilidades que el Colegio ejerce, y (4) el sistema regulatorio dual es el mecanismo menos oneroso para alcanzar el fin público de mantener una sociedad saludable.

El 5 de junio de 2020 los Cirujanos Dentistas presentaron una *Moción en solicitud de sentencia sumaria*. En lo pertinente, adujeron que la falta de fondos públicos no justificaba infringir su derecho constitucional a la libre asociación. Indicaron que, si el Estado podía financiar al

Colegio, también podría, de ser necesario, destinar fondos para la *Junta Dental*.

Por su parte, el 22 de julio de 2020 el Estado presentó una *Moción de sentencia sumaria*. En esta argumentó que, a pesar de que los Cirujanos Dentistas reclamaban su derecho constitucional a la libre asociación, la balanza se debía inclinar a favor de la protección del interés apremiante del Estado: salvaguardar la salud pública y la dignidad del ser humano.

Tras contar con las correspondientes réplicas y dúplicas de las partes, el 17 de diciembre de 2020 el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual sostuvo la constitucionalidad de la colegiación compulsoria de los cirujanos dentistas.

Inconformes, los Cirujanos Dentistas presentaron un recurso de apelación ante el Tribunal de Apelaciones y este último emitió una *Sentencia* el 29 de octubre de 2021 mediante la cual revocó la determinación del Tribunal de Primera Instancia. El foro apelativo intermedio entendió que estaba en controversia si la colegiación compulsoria era el medio menos oneroso para salvaguardar el interés apremiante del Estado. Por esa razón, devolvió el caso al Tribunal de Primera Instancia.

Culminado el descubrimiento de prueba, el 16 de diciembre de 2022 los Cirujanos Dentistas y el Colegio presentaron nuevamente sendas mociones de sentencia sumaria en las que reiteraron sus posturas. Lo mismo ocurrió con las réplicas y las dúplicas posteriores. Asimismo, tanto los

Cirujanos Dentistas como el Colegio solicitaron que el Tribunal de Primera Instancia tomara conocimiento judicial de las distintas determinaciones de este Tribunal respecto a la constitucionalidad de las colegiaciones compulsorias.

Posteriormente, el 1 de marzo de 2024 el Tribunal de Primera Instancia dictó *Sentencia* mediante la cual decretó la constitucionalidad de la colegiación compulsoria. El foro primario esbozó ochenta (80) hechos incontrovertidos, entre los cuales se encontraban los siguientes:

> 5) De conformidad con la ley orgánica del [Colegio], este quedó investido con la facultad para:
>
> > (a) Subsistir a perpetuidad, demandar y ser demandado, como persona jurídica.
>
> . . .   .   .   .   .   .   .
>
> > (e) Para adoptar su reglamento, que será obligatorio para todos los miembros, y para enmendar aquél, en la forma y bajo los requisitos que en el mismo se estatuyan. Se autoriza al Colegio, previa audiencia en la que se dará al interesado oportunidad de ser oído, a imponer sanciones administrativas a los miembros de dicho Colegio que violaren las disposiciones de los reglamentos así adoptados. El reglamento dispondrá todo lo concerniente a los procedimientos que habrán de seguirse en dicha audiencia.
>
> > (f) **para adoptar e implantar** los cánones de ética profesional que regirán la conducta de los dentistas.
>
> > (g) Para recibir e investigar las quejas juradas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta Directiva para que actúe, y después de una vista preliminar, en la que se dará oportunidad al interesado o su representante, si encontrara causa fundada instituir el correspondiente procedimiento de destitución ante la Junta Dental Examinadora. Nada de lo dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Dental Examinadora para iniciar por su propia cuenta estos procedimientos. 20 [LPRA] [sec.] 112(a), (e)-(g).
>
> . . .   .   .   .   .   .   .
>
> 8)El [Colegio] ha promovido el encausamiento de personas que realizan procedimientos dentales sin estar debidamente autorizados por el Estado, que se conoce como intrusismo. El [Colegio] está constantemente monitoreando y fiscalizando la práctica dental en el país para asegurarse que las personas

que realizan procedimientos dentales sean aquellas debidamente licenciadas y autorizadas por el Estado.

.   .   .    .     .     .     .     .

12) El [Colegio] es la institución encargada de la educación continua de su matrícula, de manera que los colegiados estén al día en las nuevas prácticas y desarrollo[s] en el campo de la odontología.

13) Las cuotas que pagan los colegiados no van destinadas a procesos electorales político-partidistas o a la formulación de opinión pública sobre aspectos generales de la administración pública, sino a la prestación de servicios de los propios colegiados y a la reserva de activos de la institución.

.   .   .    .     .     .     .     .

21) De acuerdo con la *Occupational Employmen[t] and Wage Statistics*, los dentistas en Puerto Rico para mayo de 2021 generaron en promedio un salario anual de $87,300.00.

.   .   .    .     .     .     .     .

33) El [Colegio] presta servicios a sus miembros, no obliga a ninguno de estos a asistir a asamblea alguna, a pertenecer a algún comité ni a participar de alguna actividad del Colegio. A parte de la cuota a los colegiados, el [Colegio] no supone de otra obligación a sus miembros.

.   .   .    .     .     .     .     .

**39) La Junta [Dental] no tiene los recursos para brindar ayuda y socorro mutuo a los dentistas. En palabras del Presidente de la Junta Dental: "[n]osotros no tenemos recursos ni para nosotros mismos".**

**40) El [Colegio] puede relevar del pago de la cuota a los cirujanos dentistas que demuestren tener un estado que les impida pagarla.**

.   .   .    .     .     .     .     .

**42) La orientación sobre educación de salud oral en Puerto Rico la realiza el [Colegio].**

.   .   .    .     .     .     .     .

**44) La Junta Dental no [ofrece] cursos de educación continua.**

**45) La Junta Dental depende de la estructura y la red de apoyo del [Colegio] para la difusión de [sus] mensajes a la comunidad dental, pues [esta] carece de esa estructura y capacidad.**

**46) La Junta Dental tiene solo una empleada asignada: una secretaria.**

.   .   .    .     .     .     .     .

**48) La Junta Dental debe compartir su única secretaria y empleada asignada con otras tres juntas.**

**49) La Junta Dental comparte un abogado con otras juntas examinadoras ubicadas en la Oficina de Reglamentación y Certificación de Profesionales de la Salud.**

**50) La Junta Dental no tiene un investigador para casos.**

**51) La Junta Dental no tiene un presupuesto específico para su junta.** El presupuesto proviene de un conglomerado de la Oficina de Reglamentación y Certificación de Profesionales de la Salud que aproximadamente es de $4.6 millones distribuidos en treinta y una (31) juntas.

**52) En materia de disponibilidad de recursos, la Junta Dental está ciertamente limitadísima. Carecen en ocasiones de tinta para sus impresoras.**

. . . . . . . . .

**<u>54) El 18 de enero de 2019, la Junta Dental suscribió un documento donde apoyó la colegiación compulsoria y se opuso a la descolegiación del [Colegio]. Esto se sustentó en todo el apoyo que provee el [Colegio] y que la Junta Dental no podría atender la necesidad que atiende el Colegio de este descolegiarse.</u>**

**55) El [Colegio] es quien emite los certificados necesarios para que un cirujano dental se beneficie de los incentivos contributivos de la Ley Núm. 60-2019, según enmendada, también conocida como *Código de Incentivos de Puerto Rico*. Esto así ya que la Administración de Seguros de Salud (ASES) provee la información necesaria para estos al Colegio y no a la Junta. Esto se debe a que la Junta [Dental] no tiene los recursos para administrar los incentivos contributivos de la Ley Núm. 60-2019.**

**56) Entre los requisitos que deben cumplir los solicitantes para las Solicitudes de Decretos para Médicos Cualificados se encuentra prestar servicios médicos en regiones que el [Colegio] determine que carecen de ciertos servicios médicos o dentales especializados.**

. . . . . . . . .

**62) La Comisión Ética del [Colegio] tiene la facultad para investigar controversias éticas.**

**63) La Comisión de Quejas y Agravios del Colegio recibe las quejas de los pacientes.**

**64) El [Colegio] recibe la mayor cantidad de quejas y agravios.**

. . . . . . . . .

**67) Los temas de ética son atendidos por el [Colegio]. Cuando surge un problema de ética, de violación de la profesión o de algún tipo de conflicto entre dentistas o pacientes, quien asiste es el Comité del [Colegio].**

. . . . . . . . .

**69) El [Colegio] ha denunciado al Departamento de Justicia, al FBI y a otras entidades, ilegalidades relacionadas con la salud oral.**

**70) El [Colegio] se ha coordinado con la Junta Dental para denunciar las ilegalidades relacionadas con la salud oral.**

. . . . . . . . .

**74) El representante de Puerto Rico ante la American Dental Association lo elige el [Colegio] y no la Junta Dental pues esta no tiene los recursos o mecanismos para elegirlo.**

. . . . . . . .

**76) Para el Presidente de la Junta Dental el [Colegio] tiene personal para atender asuntos que la Junta [Dental] no tiene. A su entender, eliminarlo recargaría el sistema.**

**77) La Junta Dental no tiene los recursos para asumir las gestiones que el [Colegio] realiza.**

**78) Para el Presidente de la Junta Dental, descolegiar el [Colegio] podría afectar la salud oral de Puerto Rico.** (Negrillas suplidas).[1]

Ante este cuadro fáctico, el Tribunal de Primera Instancia determinó que la colegiación compulsoria de los Cirujanos Dentistas se deriva de un sistema de regulación compartido entre el Estado y el Colegio. Explicó que, mientras que el Colegio desempeña las funciones relacionadas con la supervisión ética y el cumplimiento de los requisitos de educación continua, la Junta Dental es para todos los efectos una entidad inoperante. Inclusive, enfatizó que la Junta Dental se opuso a los esfuerzos legislativos para eliminar la colegiación compulsoria.

En desacuerdo, el 30 de abril de 2024 los Cirujanos Dentistas presentaron un recurso de apelación ante el Tribunal de Apelaciones. El 6 de junio de 2024 tanto el Colegio como el Estado comparecieron mediante sus respectivos alegatos. El 26 de junio de 2024 el foro apelativo intermedio emitió una *Sentencia* mediante la cual determinó que el requisito de colegiación compulsoria contenido en la Sección 3 de la Ley del Colegio de Cirujanos Dentistas, *supra*, era inconstitucional. Fundamentó su conclusión en que el Estado

---

[1] *Alegato civil*, págs. 8-13.

no logró demostrar que la colegiación compulsoria fuera el medio menos oneroso para salvaguardar su interés apremiante de regular la profesión y proteger la salud pública. Ante ello, el foro apelativo intermedio determinó que existen mecanismos menos onerosos para regular la profesión dental, como la Ley Núm. 75, *infra*, que establece la Junta Dental y le confiere facultades investigativas, fiscalizadoras, disciplinarias y de concesión de licencias respecto a los cirujanos dentistas.

El 23 de agosto de 2024 el Colegio presentó un recurso de apelación ante este Tribunal. El 12 de septiembre de 2024 el Estado y los Cirujanos Dentistas presentaron sus respectivas comparecencias.

## II.

### a.   El derecho a la libre asociación

El derecho a la libertad de asociación está consagrado expresamente en nuestra Constitución, en la cual se establece que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. ELA, LPRA, Tomo 1, ed. 2016. A pesar de que el derecho a la libre asociación se expresa en su vertiente positiva en el texto de la Constitución, este Tribunal también ha reconocido el derecho en su vertiente negativa, dígase, el derecho a no asociarse. Rodríguez Casillas *et al.* v. Colegio, 202 DPR 428 (2019); Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791 (2014). Sin embargo, ni la vertiente positiva de este derecho constitucional ni la negativa constituyen un derecho

absoluto, lo cual significa que puede ceder en determinadas circunstancias ante intereses de mayor jerarquía o ante situaciones que revistan un alto interés público. P.N.P. v. De Castro Font II, 172 DPR 883 (2007); P.A.C. v. ELA I, 150 DPR 359 (2000); Democratic Party v. Tribunal Electoral, 107 DPR 1 (1978).

Sobre esto, hemos expresado que cualquier acción del Estado sobre el derecho a la libre asociación está sujeta a un escrutinio estricto. Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813; Rodríguez Casillas et al. v. Colegio, supra, págs. 449-450. El análisis que se lleva a cabo en el escrutinio estricto es en extremo riguroso, a tal punto que la ley impugnada se presumirá inconstitucional. Rodríguez Pagán v. Dpto. de Servicios Sociales, 132 DPR 617, 635 (1993). No obstante, el Estado puede legislar de manera que interfiera con este derecho, siempre y cuando demuestre que existe un interés colectivo de superior jerarquía y que la medida adoptada promueve su consecución. Rodríguez Pagán v. Dpto. de Servicios Sociales, supra, pág. 635.

Este estándar de revisión judicial requiere evaluar dos criterios; el Estado debe demostrar que: (1) la acción cuestionada sirve un interés gubernamental apremiante y (2) no tenía a su alcance una medida menos onerosa para lograr el interés articulado. Rodríguez Casillas v. Colegio, supra, pág. 467; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813; Domínguez Castro v. ELA, 178 DPR 1, 87-88 (2010); Calo Morales v. Cartagena Calo, 129 DPR 102, 133 (1991).

Sobre el primer criterio, es necesario aclarar que el Estado tiene el deber de identificar la existencia de un interés de alta jerarquía y no basta con identificar cualquier tipo de interés gubernamental. Esto resulta claro tras contrastar el hecho de que el escrutinio estricto requiere de un interés apremiante, mientras que un interés legítimo es suficiente para el escrutinio racional. Véase: Pérez Román v. Proc. Esp. Rel. de Fam., 148 DPR 201, 212-213 (1999); Rodríguez Rodríguez v. ELA, 130 DPR 562, 582 (1992); San Miguel Lorenzana v. ELA, 134 DPR 405, 425 (1993). Algunos ejemplos de intereses gubernamentales que se han reconocido como apremiantes son: la regulación de distintas profesiones; la salud pública; proteger el bienestar de los menores; investigar y combatir el crimen y mantener la integridad de la rama judicial y la confianza del pueblo en un sistema judicial imparcial. Rexach v. Ramírez Vélez, 162 DPR 130 (2004); El Pueblo de Puerto Rico v. Santiago Feliciano, 139 DPR 361 (1995); Williams-Yulee v. Florida Bar Supreme Court of the United States, 575 US 433 (2015).

Tras superar el primer escollo del escrutinio estricto, al identificar la existencia de un interés apremiante, el tribunal debe evaluar si existe una medida menos onerosa que la medida impugnada para proteger el interés apremiante. Rodríguez Casillas et al. v. Colegio, supra, pág. 450; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. La Corte Suprema de los Estados Unidos ha explicado que esto significa evaluar si el acto impugnado es **necesario** para adelantar el

interés apremiante que el Estado identificó. City of Richmond v. J.A. Croson Co., 488 US 469, 471 (1989).

Además, la Corte Suprema de los Estados Unidos explicó más a fondo lo que significa evaluar el criterio de la existencia de un medio menos oneroso en U.S. v Playboy Entertainment Group, Inc., 529 US 803 (2000). En ese caso, la Corte Suprema de los Estados Unidos, aplicando el escrutinio estricto, analizó si el Estado contaba con una alternativa menos onerosa para cumplir con su propósito. En particular, la Corte Suprema evaluó si el medio menos oneroso no solo existía en teoría, sino que evaluó que este fuese efectivo en la práctica. Además, explicó que cuando se plantea la existencia de una alternativa plausible y menos restrictiva que la impugnada, es obligación del Estado probar que esa medida propuesta sería inefectiva en la consecución del interés adelantado. U.S. v. Playboy Entertainment Group, Inc., supra.

Es decir, para concluir que existen medidas menos onerosas, no es suficiente apuntar a la existencia de una alternativa que **podría cumplir** con el interés apremiante del Estado, sino que es forzoso evaluar la **viabilidad y la efectividad** de las medidas alternativas **para asegurarse de que esta en efecto cumpliría con su propósito**. Este es el mismo ejercicio analítico que incorporé en la postura que expresé en Román Negrón v. Colegio de Contadores Públicos Autorizados, 212 DPR 509 (2023) (Opinión de conformidad de la Jueza Presidenta Oronoz Rodríguez). Véase, también: Delucca Jiménez v. Colegio de Médicos Cirujanos de Puerto

Rico, 2023 TSPR 119, 213 DPR __ (2023) (Opinión disidente de la Jueza Presidenta Oronoz Rodríguez); Reyes Sorto v. ELA, 212 DPR 109 (2023) (Opinión de conformidad del Juez Asociado señor Rivera García, a la cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez).

Nótese, además, que este Tribunal también ha hecho expresiones en las cuales ha considerado la viabilidad de una medida alternativa. En Trinidad Hernández v. ELA, 188 DPR 828 (2013), tuvimos la encomienda de evaluar la procedencia de una reforma al Sistema de Retiro, al amparo de la cláusula contra el menoscabo de obligaciones contractuales de nuestra Constitución. El escrutinio aplicable en ese caso requería que la modificación contractual cuestionada, además de ser razonable, debía ser necesaria para adelantar un propósito gubernamental importante. Sobre esto, este Tribunal expresó que "no se sostendrá el menoscabo de una obligación contractual si la parte demandante demuestra que existen alternativas menos drásticas o severas que las que el legislador escogió para lograr su objetivo". Trinidad Hernández v. ELA, supra, pág. 837. Sin embargo, los allí demandantes alegaron que existían alternativas menos onerosas, pero no detallaron cómo estas se llevarían a cabo ni si asegurarían la solvencia del Sistema de Retiro. Entonces, este Tribunal concluyó que estos no presentaron "evidencia para convencer al tribunal en un juicio [de] que estas alternativas **son viables y menos onerosas**". (Énfasis suplido). Trinidad Hernández v. ELA, *supra*, pág. 838.

Por lo anterior, aunque no hemos tenido la oportunidad de abundar sobre qué exactamente significa que una alternativa sea o no viable, indudablemente ha sido un factor que hemos tomado en consideración previamente. <u>Delucca Jiménez v. Colegio de Médicos Cirujanos de Puerto Rico</u>, *supra*.

**b.   Ley del Colegio de Cirujanos Dentistas**

La Sección 3 de la Ley del Colegio de Cirujanos Dentistas establece el requisito de colegiación compulsoria. De manera específica, establece que:

> **Celebrada la primera junta general del Colegio ninguna persona que no sea miembro del mismo podrá ejercer la profesión de cirugía dental en el Estado Libre Asociado,** exceptuando estos casos:
>
> Los dentistas en servicio activo en las Fuerzas Armadas de los Estados Unidos en el desempeño oficial de sus obligaciones y a empleados permanentes de agencias federales que participen en proyectos de investigación odontológicas debidamente reconocidos por la Junta Dental Examinadora, la Escuela de Odontología y el Departamento de Salud. (Negrillas suplidas). 20 LPRA sec. 113.

Por su parte, la Sección 2 del referido estatuto confiere al Colegio facultad:

> **(a)** Para subsistir a perpetuidad bajo este nombre; demandar y ser demandado, como persona jurídica.
> **(b)** Para poseer y usar un sello que podrá alterar a su voluntad.
> **(c)** Para adquirir derechos y bienes, tanto muebles como inmuebles, por donación, legado, tributos entre sus propios miembros, compra o de otro modo; y poseerlos, traspasarlos, hipotecarlos, arrendarlos y disponer de los mismos en cualquier forma.
> **(d)** Para nombrar y elegir sus directores y funcionarios u oficiales, según estipule el reglamento del Colegio y la ley que lo creó.
> **(e)** Para adoptar su reglamento, que será obligatorio para todos los miembros, y para enmendar aquél, en la forma y bajo los requisitos que en el mismo se estatuyan. Se autoriza al Colegio, previa audiencia en la que se dará al interesado oportunidad de ser oído, a imponer sanciones administrativas a los miembros de dicho Colegio que violaren las disposiciones de los reglamentos así adoptados. El reglamento dispondrá todo lo concerniente a los procedimientos que habrán de seguirse en dicha audiencia.
> **(f) Para adoptar e implantar los cánones de ética profesional que regirán la conducta de los dentistas.**
> **(g) Para recibir e investigar las quejas juradas que se formulen respecto a la conducta de los miembros en ejercicio de la profesión, pudiendo remitirlas a la Junta Directiva**

**para que actúe, y después de una vista preliminar, en la que se dará oportunidad al interesado o su representante, si encontrara causa fundada instituir el correspondiente procedimiento de destitución ante la Junta Dental Examinadora.** Nada de lo dispuesto en este inciso se entenderá en el sentido de limitar o alterar la facultad de la Junta Dental Examinadora para iniciar por su propia cuenta estos procedimientos.

**(h) Para proteger a sus miembros en el ejercicio de la profesión** y, mediante la creación de montepíos, sistemas de seguros y fondos especiales, o en cualquier otra forma, socorrer a aquellos que se retiren por inhabilidad física o avanzada edad y a los herederos o a los beneficiarios de los que fallezcan.

**(i)** Para ejercitar las facultades incidentales que fueren necesarias o convenientes a los fines de su creación y funcionamiento que no estuvieren en desacuerdo con este subcapítulo. (Negrillas suplidas). <u>Íd.</u>, sec. 112.

En esta línea, la Sección 13 impone al Colegio los siguientes deberes y las siguientes obligaciones:

(1) Contribuir al adelanto y desarrollo de la ciencia y el arte de la odontología[.]
(2) Elevar y mantener la dignidad de la profesión y sus miembros.
(3) Establecer relaciones con asociaciones análogas de otros países, dentro de determinadas reglas de solidaridad y cortesía.
(4) Laborar por la implantación de leyes estaduales y nacionales adecuadas que respondan a un espíritu razonable y justo y que tengan relación con la profesión de dentista.
(5) Cooperar con la profesión médica y sus aliadas en todo cuanto sea de interés mutuo y beneficioso al bienestar general.
(6) Promover relaciones fraternales entre sus miembros.
(7) Sostener una saludable y estricta moral profesional entre los asociados.
(8) Suministrar los informes que el Gobierno solicite. <u>Íd.</u>, sec. 123.

La Sección 9 de la Ley dispone que "[c]ada año los miembros del Colegio pagarán una cuota que será fijada por reglamento". <u>Íd.</u>, sec. 119. Ante la presentación del primer pago de cuota, el Colegio le expide al dentista un certificado en el cual acredita que este ha cumplido con los requisitos legales y reglamentarios, y que queda autorizado a practicar la profesión durante el año de conformidad y bajo las condiciones que establecieran los reglamentos del Colegio. <u>Íd.</u>, sec. 121. El pago de la cuota anual es un requisito para

mantener la colegiación. Íd., sec. 120. A esos efectos, la Ley provee para la imposición de penalidades ante el impago de la cuota anual. Específicamente, indica que:

> Todo dentista que[,] sin estar debidamente colegiado, según se dispone por esta ley, practique como persona capacitada y autorizada para ello, se anuncie como tal o trate de pasar como dentista colegiado en ejercicio, será culpable de delito menos grave; y convicto que fuere será castigado con multa mínima de ciento veinticinco dólares ($125) y máxima de doscientos cincuenta dólares ($250). Íd., sec. 122.

Resulta evidente que el Colegio tiene como propósito regular la conducta de los profesionales odontológicos y protegerles mediante el establecimiento de sistemas de seguros y fondos especiales. Por otro lado, el Colegio tiene una serie de deberes y facultades que no están en nada relacionados con la regulación de la profesión, sino que son de índole estrictamente público y que están dirigidos a velar por la salud pública.

   c.   **Ley de la Junta Dental**

Por su parte, la Ley 75 de 8 de agosto de 1925, según enmendada, también conocida como la *Ley de la Junta Dental Examinadora* (Ley de la Junta Dental) creó la Junta Dental para "regular la práctica de la [c]irugía dental en Puerto Rico y establecer una Junta Dental Examinadora, para reglamentar a los Higienistas Dentales y a los Asistentes Dentales en Puerto Rico y para establecer delitos y penalidades". 20 LPRA sec. 81 *et seq.* El referido estatuto faculta a la Junta Dental a administrar el examen de la reválida; renovar, denegar, suspender y cancelar licencias; atender y resolver querellas presentadas por violaciones a las disposiciones de la Ley o reglamentos adoptados en virtud

de esta, e imponer las sanciones que entienda necesarias. 20 LPRA secs. 81, 82, 84 y 87. A esos efectos, la Junta Dental "podrá iniciar procedimientos para la suspensión o cancelación de licencias, en el caso de los cirujanos dentistas, de los higienistas dentales y de asistentes dentales, por su propia iniciativa o mediante querella de cualquier otra persona". 20 LPRA sec. 87a. Con el fin de nutrir este proceso, la Sección 6 autoriza a la Junta Dental a tomar juramentos, citar testigos y exigir el envío de documentos pertinentes a sus investigaciones. 20 LPRA sec. 86.

De igual manera, la Junta Dental puede imponer medidas disciplinarias en casos de impericia médica mediante la designación, por el Secretario de Justicia, de un Oficial Investigador. 20 LPRA sec. 87b. Asimismo, la Junta Dental puede imponer otras sanciones disciplinarias adicionales previa notificación y vista. 20 LPRA sec. 87c-1. Las determinaciones que surjan de los procesos antes descritos están sujetas a revisión judicial. 20 LPRA secs. 87b, 87c-1.

Como se puede apreciar, todas las responsabilidades que la Asamblea Legislativa le impuso a la Junta Dental, aunque indirectamente inciden en la salud pública por la naturaleza de la profesión, están dirigidas directamente a cumplir con la regulación efectiva de la profesión odontológica. Resulta evidente entonces que el esquema desarrollado para regular la práctica de la odontología contempla un ente encargado del licenciamiento y de la destitución de la práctica y otro ente, cuasi público, encargado de velar por la conducta de los

cirujanos dentistas y adelantar otros fines en beneficio del interés público.

La Junta Dental lleva a cabo la función de regular la admisión a –y la destitución de– la práctica dental, mientras que el Colegio implementa el Código de Ética y vela por la conducta de los que practican la profesión. Por mandato expreso de la ley, el Colegio es el organismo llamado a velar por la conducta de sus miembros a través de un código de ética, aprobado por la misma entidad –mediante el voto de los colegiados– y cuyas violaciones dan base a procedimientos ante el Colegio. Tras observarse las garantías procesales básicas, quienes violenten los postulados de ese código de ética serán referidos a la Junta Dental para el inicio del trámite de destitución.

Bajo el esquema regulatorio de la práctica de la odontología, la Junta Dental es la agencia encargada de admitir o destituir a una persona natural del ejercicio de la práctica, mientras al Colegio le corresponde velar por la conducta de esos profesionales admitidos por la Junta Dental, a través de un código de ética, que el mismo Colegio aprueba y el cual está obligado –por ley– a implementar. 20 LPRA sec. 112.

## III.

En su alegato, el Colegio solicita que revoquemos la determinación del foro apelativo intermedio a los efectos de declarar inconstitucional la colegiación compulsoria de los cirujanos dentistas. Arguye que la reglamentación de la profesión, sin más, no opera efectivamente para adelantar el

interés apremiante del Estado de velar por la salud pública. Mientras tanto, los Cirujanos Dentistas sostienen que la Junta Dental es la entidad que por mandato de ley regula la profesión odontológica. Indican, además, que el Estado no cumplió con la carga probatoria requerida a los efectos de demostrar que la colegiación compulsoria es la medida menos onerosa para salvaguardar su interés apremiante de velar por la salud pública.

La controversia de autos requiere que realicemos un análisis a la luz del escrutinio estricto, por lo que corresponde presumir la inconstitucionalidad de la medida impugnada: la colegiación compulsoria. Ante eso, debe demostrarse la existencia de un interés apremiante y que la colegiación compulsoria es la medida menos onerosa para adelantar el referido interés.

De entrada, este Tribunal ha establecido que el Estado tiene un interés apremiante de regular las profesiones a los fines de que se le provean a la ciudadanía servicios de alta calidad y competencia; en particular, expresamos que la Asamblea Legislativa tiene la facultad de regular y controlar la práctica de las profesiones, salvo la jurídica, a fin de proteger la salud y el bienestar público, así como evitar el fraude y la incompetencia. Rodríguez Casillas et al. v. Colegio, *supra*, págs. 439-440; Véase también Accurate Sols. v. Heritage Environmental, 193 DPR 423, 434 (2015); Matos v. Junta Examinadora, 165 DPR 741, 755 (2005). El Colegio adelanta el interés apremiante del Estado de regular la profesión y salvaguardar la salud pública a través de: (1)

el proceso de disciplina ética de los cirujanos dentistas, y (2) su rol como proveedor de capacitación y educación continua.

De manera específica, el Colegio cuenta con aproximadamente 23 comisiones que: (1) velan por el cumplimiento del Código de Ética Profesional; (2) atienden las querellas de conducta profesional que aleguen violaciones al Código de Ética Profesional; (3) investigan proyectos de ley que pudieran afectar la salud oral del pueblo o que estén relacionados con la profesión dental; (4) mantienen un registro de las especialidades reconocidas y adoptan medidas para ayudar en la prestación de servicios; (5) educan a la comunidad; (6) proveen educación continua a los cirujanos dentistas y (7) proveen socorro y ayuda mutua a los cirujanos dentistas, entre otros.

De estas comisiones, resultan particularmente importantes la Comisión de Ética y la Comisión de Quejas y Agravios. Por un lado, la Comisión de Ética tiene como deber atender las querellas de conducta profesional sobre violaciones al Código de Ética que sean presentadas por dentistas, pacientes, instituciones de salud, aseguradoras o entidades gubernamentales. Asimismo, podrá intervenir *motu proprio* y juzgar aquellos casos en que apareciere en cualquier medio de comunicación pública —como radio, televisión, prensa u otras formas de divulgación a la ciudadanía— información alguna que fuese permitida por un colegiado, contraria al espíritu o a la letra del Código de Ética.

Por otro lado, la Comisión de Quejas y Agravios tiene como deber atender las querellas relacionadas al aspecto clínico presentadas por pacientes, sus representantes o que por iniciativa propia estime prudente iniciar. Para lograr esto, el Colegio cuenta con un proceso de vistas. El resultado de este proceso es remitido a la Junta Dental para que esta tramite el procedimiento de sanción correspondiente.

Inclusive, el Colegio facilita que los cirujanos dentales se beneficien de los incentivos contributivos de la Ley Núm. 60-2019, según enmendada, también conocida como el *Código de Incentivos de Puerto Rico*, 13 LPRA sec. 45001, *et seq.* (Código de Incentivos). De manera específica, el referido estatuto permite que el Colegio, en conjunto con el Departamento de Salud, determine cuáles regiones judiciales carecen de servicios de salud dental para que todo dentista que cumpla con el requisito de servicios comunitarios pueda beneficiarse de los incentivos contributivos que establece el Código de Incentivos. 13 LPRA sec. 45152. Esto así ya que ASES provee la información necesaria para la generación de estos certificados al Colegio, dado que la Junta Dental no cuenta con los recursos para administrar los incentivos contributivos.

**Por su parte, la Junta Dental: (1) se opone a la descolegiación; (2) solo cuenta con una empleada asignada; (3) comparte su única empleada y su abogado con otras juntas; (4) no cuenta con un investigador de casos; (5) no tiene presupuesto específico, y (6) en ocasiones carece de tinta para sus impresoras.** A la luz del cuadro fáctico esbozado,

claramente, no existe prueba alguna que sustente que la Junta Dental pueda ser una alternativa viable y menos onerosa, ya que esta no cuenta con la estructura fiscal, estructural y de personal para promover el interés apremiante del Estado.

No obstante, en un ejercicio completamente divorciado de la realidad, la Opinión mayoritaria concluye que, si bien el Colegio en cuestión contribuye al mejoramiento y a la protección del gremio, no es una entidad reguladora. Para arribar a su conclusión, la Opinión mayoritaria descansa, primordialmente, en que la Junta Dental es la entidad facultada por ley para reglamentar la profesión odontológica. Esto pues, a su entender, la regulación de una profesión es el único interés estatal que puede justificar una medida de colegiación compulsoria. A esos efectos, explica que la preservación de la salud es una consecuencia natural de la reglamentación profesional adecuada. En ese contexto, la Opinión mayoritaria determina que no es indispensable que todos los cirujanos dentistas se afilien a un colegio para que el Estado pueda regular la práctica de una profesión en beneficio de la salud del pueblo. (Opinión mayoritaria del Juez Asociado Martínez Torres, pág. 23).

La Junta Dental admitió que carece del andamiaje necesario para descargar las responsabilidades impuestas a esta por ley y que es el Colegio quien que ha asumido y descargado las referidas responsabilidades. Esa misma entidad tendrá que manejar todas las responsabilidades regulatorias que, actualmente, descarga el Colegio. Esto a pesar de que la Junta Dental, por si sola, no tiene la capacidad práctica

para llevar a cabo sus deberes y, consecuentemente, no resulta ser una medida viable y efectiva para adelantar el interés apremiante del Estado.

En esta tesitura, el efecto práctico de la determinación que toma hoy una mayoría de este Tribunal es que el Colegio perderá jurisdicción sobre todo cirujano dentista que no esté colegiado. En ese contexto y ante la incapacidad admitida de la Junta Dental de regular adecuadamente la profesión odontológica, reducir la preservación de la salud a una consecuencia de una sana administración, pone en riesgo el bienestar colectivo y mancilla el llamado constitucional de proteger la salud de la población puertorriqueña.

Es claro que el Colegio es la medida menos onerosa para adelantar el interés apremiante de regular la profesión de los cirujanos dentistas. Esto así, pues, en la práctica comparte funciones y deberes con la Junta Dental, y esta última no tiene la capacidad práctica para, por sí sola y sin el apoyo de un Colegio financieramente robusto, regular la profesión. Aunque en teoría está facultada en ley para regular la profesión, la Junta Dental no constituye la medida menos onerosa, efectiva y viable, y necesita del Colegio y de la colegiación compulsoria para cumplir con sus deberes. Al no existir un medida menos onerosa, viable y efectiva para regular la profesión de los cirujanos dentistas, soy del criterio que el requisito de colegiación compulsoria al Colegio cumple con el crisol constitucional.

El Colegio tiene múltiples deberes y facultades que persiguen cumplir con el interés apremiante de salvaguardar

la salud pública que no comparte con la Junta Dental. A la luz de lo expuesto, correspondía concluir que la colegiación voluntaria no constituye el medio menos oneroso para adelantar el interés apremiante del Estado. Al disponer lo contrario, una mayoría de este Tribunal aborda, una vez más, la controversia de la colegiación compulsoria sin considerar las particularidades del colegio en cuestión y en total abstracción de las consecuencias de su dictamen.

A la luz del efecto grave que esto tiene para salud de las puertorriqueñas y los puertorriqueños, respetuosamente, disiento.


                              Maite D. Oronoz Rodríguez
                                 Jueza Presidenta